**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**AIRBORNE TACTICAL ADVANTAGE
COMPANY, LLC,**

        **Plaintiff,**

v.                                    **ACTION NO. 4:05cv166**

**PENINSULA AIRPORT COMMISSION,**

        **Defendant.**

## OPINION AND DISMISSAL ORDER

This action is before the court pursuant to plaintiff Airborne Tactical Advantage Company, LLC's ("ATAC") Motion for Temporary Restraining Order against defendant Peninsula Airport Commission ("PAC"). For the reasons stated below, this action is **DISMISSED** because the court lacks jurisdiction over the subject matter.

## I. Factual and Procedural History

PAC operates the Newport News/Williamsburg International Airport. Compl. ¶ 2. PAC receives federal financial assistance for airport development under a grant program established by the Airport and Airway Improvement Act of 1982 ("AAIA"), as amended, 49 U.S.C. §§ 47101 et seq. (1996 & West Supp. 2005), and administered by the Department of Transportation through the Federal Aviation Administration ("FAA"). See id. ¶ 17.[1] Section 47107 of the AAIA

---

[1] Although the AAIA directs the Secretary of Transportation to administer its provisions, the FAA is the agency within the Department of Transportation responsible for so administering, and

provides that the FAA may not approve an airport's application for AAIA grant funds unless the FAA receives written assurances from the airport applicant that, among other assurances, "the airport will be available for public use on reasonable conditions and without unjust discrimination" and no airport user will be given an exclusive right to use the airport. See Compl. ¶¶ 17-18; 49 U.S.C. § 47107(a). If the FAA approves an airport's application for AAIA grant funds, the § 47107 "grant assurances" become a binding contractual obligation between the federal government and the airport receiving the funds. Pac. Coast Flyers, Inc. v. San Diego, Cal., FAA Docket 16-04-08, 2005 WL 1900515, at *11 (July 25, 2005). Section 47107 mandates that the FAA ensure that airports receiving AAIA grant funds adhere to their grant assurance obligations. See 49 U.S.C. § 47107(g). The FAA is authorized to initiate enforcement proceedings against airport recipients allegedly in breach of these obligations and issue orders against airport recipients found in breach. See 49 U.S.C. § 47122.[2]

The FAA rules promulgated pursuant to § 47107, see 14 C.F.R.

---

ATAC refers to the FAA, rather than the Secretary of Transportation, as the AAIA's administrator. Accordingly, the FAA will be referred to herein as the administrator of the AAIA.

[2] If the FAA finds that a recipient airport has violated the grant assurances, the FAA may issue a cease and desist order, a compliance order, or an order imposing various types of penalties including termination of the airport's eligibility for grants, suspension of the payment of grant funds to the airport, or withholding approval of any new grant applications. See 49 U.S.C. § 47122; 14 C.F.R. § 16.109(a).

§§ 16.1-16.307 (2005), entitle a person doing business with an airport receiving AAIA grant funds ("an airport user") to institute FAA enforcement proceedings against the recipient airport by filing a complaint with the FAA alleging that the airport has violated the § 47107 grant assurances. See 14 C.F.R. §§ 16.1, 16.23. Courts interpreting § 47107 have uniformly held that airport users have no right to bring an action in federal court claiming a recipient airport's violation of the § 47107 grant assurances until that claim has been raised with the FAA. See, e.g., Four T's, Inc. v. Little Rock Mun. Airport Comm'n, 108 F.3d 909, 915-16 (8th Cir. 1997) (holding that since § 47107 requires the grant assurances be made to the FAA and vests enforcement authority with the FAA, Congress intended to establish an administrative enforcement scheme rather than a private right of action); Northwest Airlines, Inc. v. Kent, Michigan, 955 F.2d 1054, 1058-59 (6th Cir. 1992) (holding that since § 2210, the previous codification of § 47107, requires the grant assurances be made to the FAA, Congress intended to establish an administrative enforcement scheme); Western Air Lines, Inc. v. Port Auth. of N.Y. & N.J., 817 F.2d 222, 225 & n.4 (2d Cir. 1987) (affirming the district court's conclusion that § 2210 does not provide a private right of action); Interface Group, Inc. v. Mass. Port Auth., 816 F.2d 9, 15 (1st Cir. 1987) (holding that since § 2210 requires the grant assurances be made to the FAA, Congress did not intend to create a private right of action under

3

§ 2210); Arrow Airways, Inc. v. Dade Co., 749 F.2d 1489, 1491 (11th Cir. 1985) (holding that since nothing in the legislative history of the AAIA indicates an intent to create a private right of action, airport users have no express or implied cause of action under § 2210); Skydiving Ctr. of Greater Washington, D.C., Inc. v. St. Mary's Co. Airport Comm'n, 823 F. Supp. 1273, 1279 n.2 (D. Md. 1993) (holding that there is no private right of action under § 2210).  If an airport user raises a claim with the FAA of a recipient airport's violation of the § 47107 grant assurances, any party to the FAA action may seek judicial review of the FAA's final decision and order in the action, but only in a United States court of appeals.  See 49 U.S.C. § 46110 (1996 & West Supp. 2005); 14 C.F.R. § 16.247.

Since 1997, ATAC has operated aircraft from the Newport News/Williamsburg International Airport ("the airport") to train and assist in certifying the United States Navy and Air Force in air-to-air and air-to-ship combat operations. Compl. ¶¶ 5-6, 9. ATAC has not operated from the airport pursuant to an operating agreement with PAC, but has subcontracted or subleased hangar and office space from another airport user who has an operating agreement with PAC.  Id. ¶¶ 10-11.  In September, 2004, PAC resolved to require all airport users engaged in commercial enterprises with or for the military to have operating agreements directly with PAC.  Id. ¶¶ 25-26.  PAC informed ATAC, by letter

4

dated November 23, 2004, that ATAC must enter into an operating agreement with PAC that would require ATAC to pay PAC a gross receipts tax, and ATAC's failure to enter into such an agreement with PAC could jeopardize ATAC's ability to continue to operate from the airport. Id. ¶ 27, Ex. C (November 23, 2004, letter). Although PAC does not require other airport users to pay it a gross receipts tax, and ATAC felt that imposing this term on ATAC was economically discriminatory, ATAC attempted to negotiate an operating agreement with PAC under the terms that PAC demanded. Id. ¶¶ 30, 32, 34-35. According to ATAC, PAC refused to negotiate an operating agreement with ATAC, and, for this reason, an operating agreement was not reached. Id. ¶ 44.

In August, 2005, PAC petitioned the Circuit Court for the City of Newport News to enjoin ATAC from any further commercial use of the airport. Id. ¶¶ 45-48. The circuit court entered an order on September 14, 2005, enjoining ATAC's use of the airport, but the injunction was dissolved on October 13, 2005, by order of the Virginia Supreme Court. Id. ¶¶ 56, 60. PAC then informed ATAC, by letter dated November 17, 2005, that ATAC's personnel and property would be physically removed from the airport on December 16, 2005. Id. ¶ 61, Ex. X (November 17, 2005, letter).

After receiving this letter and before filing suit in this court, ATAC filed a complaint with the FAA alleging that PAC violated the § 47107 grant assurances by demanding an operating

5

agreement with ATAC under economically discriminatory terms and by granting another airport user an exclusive right of use by refusing to negotiate an operating agreement with ATAC and by threatening to remove ATAC from the airport.  Id. ¶ 14, Ex. A (ATAC's FAA Complaint).  For these violations, ATAC does not specifically request the FAA issue a cease and desist order against PAC, see id., but such a remedy is available if the FAA reaches an initial determination that PAC has violated the § 47107 grant assurances and after it provides an opportunity for a hearing, see 14 C.F.R. § 16.109.[3]

On December 13, 2005, ATAC filed with this court a Motion for Temporary Restraining Order, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and a single-count Complaint, both of which seek injunctive relief to prevent PAC from removing ATAC's personnel and property from the airport while the FAA enforcement proceeding is pending.  The court's jurisdiction over this action is purportedly founded on the existence of a federal question under 28 U.S.C. § 1331.  See Compl. ¶ 4; see also 28 U.S.C. § 1331 (2005) (providing that "[t]he district courts shall have original

---

[3] ATAC does specifically request the FAA impose the following penalties on PAC:  withhold grant funds promised but not yet paid to PAC; refuse to accept future grant applications from PAC until it complies with the grant assurances; and seek repayment of grant funds previously paid to PAC.  Compl. Ex. A (ATAC's FAA Complaint). ATAC also requests that the FAA oversee the negotiation of an operating agreement between PAC and ATAC under economically non-discriminatory terms.  Id.

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). ATAC does not claim that PAC's removal of ATAC from the airport would be a violation of the § 47107 grant assurances, which claim ATAC has raised in the pending FAA proceeding, and which claim the FAA is authorized to adjudicate to the exclusion of federal district courts' jurisdiction to adjudicate such a claim. See Compl. Ex. A (ATAC's FAA Complaint); see also supra at 3-4 (discussing the FAA's exclusive authority to adjudicate airport users' claims of recipient airports' violation of the § 47107 grant assurances). ATAC also does not claim that PAC's removal of ATAC from the airport would be a violation of any contractual obligation to ATAC, any Constitutional provision which protects ATAC from removal by PAC, or any particular statutory provision providing a substantive right to prevent PAC from removing ATAC. Instead, ATAC claims that PAC's removal of ATAC from the airport would be a "violation of the exclusive jurisdiction of the regulatory and investigatory powers of the Federal Aviation Administration." Comp. ¶ 4. According to ATAC, PAC's threat to remove ATAC from the airport "threaten[s] to compromise" the FAA's jurisdiction and "render [it] meaningless," such that ATAC is entitled to enjoin PAC's removal of ATAC from the airport "to protect the exclusive, primary federal jurisdiction held by the FAA." Id. ¶¶ 67-68. In other words, the court's jurisdiction over the action is purportedly founded on ATAC's claim

that once an FAA proceeding is instituted to enforce the § 47107 grant assurances, the FAA's jurisdiction to adjudicate a claim of a recipient airport's violation of the § 47107 grant assurances, which jurisdiction is exclusive to federal courts' jurisdiction to adjudicate such a claim, creates a substantive right to prevent any action that may compromise the FAA's jurisdiction. Essentially, ATAC alleges a federal law cause of action based on PAC's threat to violate a right claimed to arise under the "exclusive jurisdiction" of the FAA.

Before entertaining ATAC's Motion for Temporary Restraining Order under Rule 65, the court was obliged to examine its subject matter jurisdiction over the action. See 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2941 (2d ed. 1995) (stating that Rule 65 of the Federal Rules of Civil Procedure assumes that the court has acquired subject matter jurisdiction over the action). Finding that jurisdiction over the action cannot be founded solely on ATAC's claim of a right arising from the FAA's exclusive jurisdiction, the court issued an order on December 15, 2005, directing ATAC to show cause within ten (10) days from the issuance of the order why the action should not be dismissed for lack of subject matter jurisdiction. By an agreed order entered on January 3, 2006, nunc pro tunc December 29, 2005, ATAC's time to respond to the show cause order was extended to January 27, 2006. On January 3, 2006, PAC answered ATAC's

complaint, asserting lack of subject matter jurisdiction among its affirmative defenses.

ATAC responded to the show cause order on January 27, 2006, asserting that "the FAA has exclusive jurisdiction to determine the merits of any complaint between these parties. As a result, ATAC has been careful not to ask this Court to entertain any adjudication upon the merits, which adjudication is solely the responsibility of the FAA in the exercise of its statutory authority." Pl.'s Resp. Court's Order Show Cause ("Pl.'s Resp. Show Cause") at 2. ATAC further explains that it seeks only "an injunction to prevent PAC from circumventing this authority by taking actions outside of the purview of the FAA that would, if permitted, render meaningless the FAA's jurisdiction." Id. ATAC then argues that "[t]here is legal precedence for such an action," and attaches a copy of an order entered on May 17, 1995 by the United States District Court for the Eastern District of New York, which ATAC claims is precedence for the issuance of injunctive relief to prevent interference with an FAA proceeding to enforce the grant assurances. See id. at 2-3, Ex. A (May 17, 1995, Order).[4]

---

[4] Actually, the order attached to ATAC's response vacated a preliminary injunction order entered on October 31, 1994. See Pl.'s Resp. Show Cause Ex. A (May 17, 1995, Order). ATAC does not attach a copy of the October 31, 2004, order, but asserts that the preliminary injunction entered on October 31, 1994, prevented an airport user from interfering with a pending FAA enforcement proceeding. Id. at 2.

Even if the United States District Court for the Eastern District of New York did enjoin interference with a pending FAA enforcement proceeding, the court in no way indicates that the injunction issued to prevent violation of a right arising from the exclusive jurisdiction of the FAA. See id. Ex. A (May 17, 1995, Order) (stating only that the "Federal Aviation Administration ("FAA") has pending before it a formal administrative complaint filed by plaintiff (FAA Docket No. 13-94-15) raising some or all of the issues currently before this Court"). ATAC does not even assert that the injunction in that case was attendant to a cause of action created by the exclusive jurisdiction of the FAA. See id. at 2-3, Ex. A (May 17, 1995, Order). ATAC provides no other authority, case law or otherwise, to support its claim of a cause of action created by the FAA's exclusive jurisdiction.

## **II. Analysis**

The subject matter jurisdiction of a federal district court is limited to that conferred by the Constitution and Congress, and is presumed absent unless the party seeking the court's jurisdiction can show otherwise. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A federal district court has no inherent power, nor has it been conferred a general power, to enjoin action, even if justice would seem to require its injunction. Injunction may be available only as a remedy attendant to an underlying cause of action over which the court has acquired subject matter

jurisdiction.  See 42 Am. Jur. 2d Injunctions § 1 (2005) (explaining that the party seeking injunction must allege violation of a right for which injunction is an appropriate remedy); see also 11A Wright, Miller & Kane, supra, at § 2941 (stating that Rule 65 of the Federal Rules of Civil Procedure assumes that the court has acquired subject matter jurisdiction over the action).  The court acquires federal question jurisdiction over the underlying cause of action if the face of the plaintiff's complaint establishes that federal law creates the cause of action.  See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983); Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).[5]  In other words, if the plaintiff alleges violation of a right claimed to exist under federal law, unless the claim of right is insubstantial or frivolous, the plaintiff will invoke the court's federal question jurisdiction to determine if the claimed right exists and whether a remedy may be granted for violation of that right.  See 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3562 (2d ed. 1984); see also Bell v. Hood, 327 U.S. 678, 681-83 (1946) (explaining that the jurisdictional issue is separate from the question of whether the complaint states a claim on which relief can be granted:  if

---

[5] Or, if state law creates the cause of action, the court acquires federal question jurisdiction if the complaint reveals that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.  See Franchise Tax Bd., 463 U.S. at 27-28; Mulcahey, 29 F.3d at 151.

the complaint alleges a claim under the Constitution or federal statutes that is not insubstantial or frivolous, the district court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief).

Lack of substantiality in a claim of right existing under federal law may appear either because the claim "is obviously without merit or because its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject." Cal. Water Serv. Co. v. Redding, 304 U.S. 252, 255 (1938). Prior decisions of the Supreme Court and the Fourth Circuit have held that federal laws vesting jurisdiction in the district courts do not create federal causes of action. See, e.g., Montana-Dakota Utils. Co. v. Northwest Pub. Serv. Co., 341 U.S. 246, 249 (1951) (explaining that statutory provisions vesting jurisdiction only confer jurisdiction to adjudicate those causes of action arising from other sources); Kanawha Valley Labor Council, AFL-CIO v. Am. Fed'n of Labor & Congress of Indus. Orgs., 667 F.2d 436, 438 (4th Cir. 1981) (holding that 28 U.S.C. § 1337, which vests district courts with "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies," does not create causes of action).

ATAC has filed a complaint with the FAA alleging that PAC's threat to remove ATAC from the airport violates the § 47107 grant

assurances. See Compl. Ex. A (ATAC's FAA Complaint). A cease and desist order is a mechanism available to the FAA to enforce PAC's compliance with the § 47107 grant assurances, provided that the FAA reaches an initial determination that PAC has violated the grant assurances. See 14 C.F.R. § 16.109. ATAC, itself, asserts that the FAA has primary authority to enforce PAC's compliance with the § 47107 grant assurances, which authority is exclusive to district courts' jurisdiction to adjudicate a claim of PAC's violation of the grant assurances. See supra at 7-9. It follows from ATAC's own assertion that the enforcement mechanisms in the pending FAA proceeding are available to the exclusion of any remedy that may be provided in a federal district court for PAC's violation of the grant assurances, even if ATAC may find a temporary restraining order issued by a federal district court preferable to a cease and desist order issued by the FAA.

Seeking to avail itself of a remedy in this court for PAC's threat to remove ATAC from the airport, without basing its claim for relief on PAC's violation of the grant assurances, ATAC alleges that PAC's threat to remove ATAC from the airport violates the FAA's exclusive jurisdiction. However, the FAA's exclusive jurisdiction does not give rise to a federal cause of action in this court. See generally Montana-Dakota Utils. Co., 341 U.S. at 249; Kanawha Valley Labor Council, AFL-CIO, 667 F.2d at 438. Simply put, a federal law conferring jurisdiction in an executive

branch agency does not create causes of action in federal district courts. In its response to the court's show cause order, ATAC provides no authority, case law or otherwise, to substantiate its claim of a federal right to prevent any action that may compromise the FAA's jurisdiction, which right it claims arises under the FAA's exclusive jurisdiction. See supra at 9-10. Since ATAC has not shown that the court has jurisdiction over the action, the action must be dismissed for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(h)(3) (2005) (providing that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

### III. Conclusion

For the reasons stated above, this action is **DISMISSED** because the court lacks jurisdiction over the subject matter. The Clerk is **DIRECTED** to send a copy of this Order to counsel for plaintiff and defendant.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith

Norfolk, Virginia
March 21, 2006